## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Stuart T. VonCanon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I am a task force officer ("TFO") with the Federal Bureau of Investigation ("FBI"), and as such, I am charged with investigating violations of the laws of the United States as delineated in Title 28 of the Federal Code of Regulations. I have worked as a TFO since January of 2015. I have extensive experience investigating all types of computer crimes, including criminal and national security computer intrusions, intellectual property rights violations, and theft of trade secrets. As an FBI TFO, I have received extensive training in the investigation of violations of federal and state law. Currently, I am assigned to the Richmond Division of the FBI, where I investigate cyber matters, including computer-enabled crimes that involve fraud schemes designed to induce victims to wire money to fraudulent bank accounts.

2.    As part of my official duties as an FBI TFO, I am authorized to conduct investigations, carry firearms, execute warrants, make arrests, and perform other duties sanctioned by the FBI. Over the course of my career, I have conducted interviews and secured other relevant information, using a variety of investigative techniques. I am a federal law enforcement officer under the applicable provisions of the U.S.C. and under Rule 41(a) of the Federal Rules of Criminal Procedure. As a result, I am authorized to apply for this search warrant. I have personally participated in the investigation described below.

3.    I make this affidavit in support of a criminal complaint charging the following individual HAKHYUN CHUN (hereinafter "CHUN"), with money laundering, in violation of 18 U.S.C. § 1956(a)(1), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

4.     This affidavit is being submitted for the limited purpose to show merely that there exists sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this investigation. I have set forth facts that I believe are sufficient to charge CHUN with the criminal conduct set forth herein.

## RELEVANT STATUTORY PROVISIONS

5.     **Wire Fraud:** Title 18, United States Code, Section 1343, defining wire fraud provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice….

6.     **Conspiracy to Commit Wire Fraud:** Title 18, United States Code, Section 1349 provides that any person who attempts or conspires to commit [wire fraud] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

7.     **Money Laundering:** Title 18, United States Code, Section 1956(a)(1) provides in pertinent part that whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i)   with the intent to promote the carrying on of specified unlawful activity; or

* * *

(B)     knowing that the transaction is designed in whole or in part--

    (i)     to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii)     to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.  For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of "specified unlawful activity" if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

8.      **Conspiracy to Commit Money Laundering**: Title 18, United States Code, Section 1956(h) states that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

9.      **Specified Unlawful Activity:**  The definition of "specified unlawful activity" is given in 18 U.S.C. § 1956(c)(7), which lists several categories of offenses that constitute "specified unlawful activity."  Wire fraud, penalized under 18 U.S.C. § 1343, is included as a "specified unlawful activity" for purposes of money laundering in 18 U.S.C. § 1956(c)(7)(A), which in turn incorporates the list of "racketeering activities" set forth in 18 U.S.C. § 1961(1).

**PROBABLE CAUSE**

10.     On or about September 26, 2018, an individual using the name "Rachel Moore" contacted an employee in the procurement department of Virginia Commonwealth University (hereafter "VCU") using the email address accounts@kjellstromleegroup.com.  As detailed further below, the accounts@kjellstromleegroup.com is purposefully very similar to the actual email domain name for Kjellstrom and Lee, Inc., which is a large construction company located in Richmond, Virginia, and which has completed construction projects for multiple universities,

3

including VCU. "Rachel Moore" advised the procurement department employee that the bank account on file for receiving payments was currently being audited and inquired if the next payment could be sent to their foreign bank account. The VCU employee responded to "Rachel Moore" on September 28, 2018, with questions regarding the length of the audit and informed "Rachel Moore" that the university's Treasury Department could assist her with setting up ACH transfers.

11. On October 4, 2018, "Rachel Moore" sent a reply email to the university employee stating:

> *"Hope you are good. Thank you for the reply. In regards to the ACH setup, we can only have this done after the audit. The audit is usually between 4 and 6 weeks. Our CFO advised if we can have our payments sent by wire, and we setup the ACH once the audit is over. Will this be a possibility? Kindly get back to me as soon as you can. Thank you for your time."*

12. The VCU employee responded to "Rachel Moore" on the same day and told "Moore" to contact the university once the audit was complete to get assistance with setting up ACH wire transfers. They further advised "Rachel Moore" that a form is required to establish ACH transfers and it would need to be sent to the university Treasury Department as they are the ones who enter the account information into the payment system.

13. On October 24, 2018, "Rachel Moore" contacted VCU and stated, *"Hope you are good. Do you have any payment for us?"* A VCU employee responded on October 25, 2018, by stating, *"The last payment I am showing in our system, was issued on check 31499151, in the amount of $1,401,569.76. If you have any open invoices, please email them to me. Thank you!"*

14. On October 30, 2018, "Rachel Moore" sent a message to the VCU employee stating:

> *"Can you please confirm when check 31499151 was issued or sent out. In regards to the audit, we need to confirm what month to apply the payment to, in terms of when it was received. Thank you for your time."*

On the same day, the university employee responded with a screenshot from the payment processing system showing the details of the most recent transaction.

15. Later, on October 30, 2018, "Rachel Moore" sent a follow-up message to the university employee that read:

> *"Thank you for the information.  We have not signed up to receive ACH payments yet, as we still have the audit ongoing, so please kindly notify us before our next payment is issued.  Thank you for your time."*

The VCU employee responded to "Rachel Moore" and asked if there were currently any open orders with the university as there were currently no pending payments for their account.

16. On November 1, 2018, the university employee sent a follow up message to "Rachel Moore" stating, *"There is a payment scheduled for today's check run.  A check number has not been assigned as of yet, but the amount is $607,061.17.  Reference number EP250XXXX."*

17. On December 10, 2018, "Rachel Moore" sent the following message to the university employee:

> *"Hope you are good.  We signed up for ACH a couple of weeks ago, but a remittance email was not requested.  Can you please notify us at remittance@kjellstromleegroup.com when a payment has been made.  Can you please also confirm our last payment was on the 1st of November.  Thank you."*

The university employee responded on December 11, 2018, and stated, *"Check 3150XXXX was issued on 11-16-18, in the amount of $660,259.31.  ACH was set up on 11/20/18; therefore, future payments will be sent directly to your account.  Thank you!"*

18. On December 20, 2018, VCU initiated a payment via ACH wire transfer in the amount of $469,819.44 from their bank account to an account with the Bank of Hope, account number XXXXXX3483 (hereinafter "account 3483"), as requested in the ACH setup form provided by "Rachel Moore."  On January 3, 2019, the university was contacted by their bank

5

due to concerns the December 20, 2018 wire transfer was fraudulent. The university contacted Kjellstrom and Lee and learned they did not have an employee named "Rachel Moore" and that no establishment of ACH wiring had been initiated by Kjellstrom and Lee.

19. Bank records obtained from Bank of Hope relating to account 3483 showed the account was opened on or about August 17, 2017, in the name of EDHD Inc. by an individual named Samuel Chun (hereinafter S. Chun), who provided an address 1152 S. Ardmore Avenue, Los Angeles, California 90006, phone numbers 213-███-4255 and 213-███-7771, DOB ██████, 1990, and SSN ███████-9549. The email address hakhyunchun123@gmail.com and physical address 825 E. 29th Street, Los Angeles, California 90011 were also provided in the same document under the "Non-Individual Owner Information" section. Documents provided to the Bank of Hope when account 3483 was opened showed EDHD Inc. was incorporated on June 2, 2017, by HAKHYUN CHUN and listed the business address as 825 E. 29th Street, Los Angeles, California 90011. By the time banking officials and investigators learned that VCU's wire transfer was induced by fraud the overwhelming majority of the $469,819.44 wire transfer could not be recovered and was a loss to VCU.

20. Analysis of records obtained from the Bank of Hope shows that from December 21 to December 26, 2018, over $450,000 of the wire from VCU was redistributed through a variety of transactions. These transactions included 38 checks, 4 wire transfers and a $7,495.90 cash withdrawal. The checks written out of account 3483 during this period all appeared to have the same signature. That signature, while not easily decipherable, looked to be the name "Samuel Chun." Of specific interest was the fact that each and every signature on all the checks appeared to be an exact copy of one another.

21. On February 25, 2019, special agents with the FBI's Los Angeles Division interviewed S. Chun regarding account 3483. S. Chun stated that he opened the account at the instruction of his father, who was unable to open an account on his own. He confirmed that it was his signature on EDHD checks. S. Chun stated his father, HAKHYUN CHUN, had a stamp of S. Chun's signature, and could be using it to forge his signature on financial documents.

22. Further analysis of the movement of the stolen money out of account 3483 showed more than twenty-five payees to whom the money was transferred. Many of the payees appeared, on paper, to be various clothing and/or textile companies. Records also showed that HAKHYUN CHUN transferred $38,500 to his son, S. Chun. During the interview of S. Chun, he acknowledged his father wired at least $29,000 to his bank account to "pay off loans." S. Chun also acknowledged transferring $17,000 to a separate personal checking account via cashier's check.

23. Of the 38 checks written on account 3483 between December 21 and December 26, 2018, twenty-three of them were for amounts between $7,000 and $9,840 in an apparent effort to circumvent reporting requirements for transactions over $10,000[1]. Six of the checks and two of the wire transfers were for amounts over $10,000, with one of the checks being written for $55,000.

24. On March 1, 2019, special agents with the FBI's Los Angeles Division interviewed HAKHYUN CHUN. CHUN confirmed he asked his son S. Chun to open a bank account for his business EDHD Inc. with Bank of Hope since he was unable to open the account

---

[1] Your affiant notes that the federal requirement that a bank file a currency transaction report (CTR) for a transaction over $10,000 only applies to transactions involving cash, not checks. Based on my training and experience, however, it appears that this distinction between cash and check transactions for purposes of CTRs is a nuance that is not universally known by individuals engaged in money laundering activity.

himself. Your affiant notes that records from the banking industry reveal that over the years CHUN has had several bank accounts closed due to suspected money laundering activity associated with those accounts.

25. CHUN confirmed S. Chun did not actually work for the company. CHUN was shown a statement for account 3483 that included the $469,819.44 wire transfer into his account on December 21, 2018, from VCU. CHUN stated that sometime in January 2019 "two white men" walked into his company at EDHD Inc., located at 825 E. 29th Street, Los Angeles, California, and asked to go into business with him. According to CHUN, he had never met those men before, and did not recall their names, phone numbers or any other contact information. CHUN indicated that he gave his Bank of Hope account information to these individuals in the form of a voided check, and believed they were investors who wanted to invest in his company. Shortly thereafter, the $469,819.44 wire transfer was deposited into his account. CHUN explained had several outstanding debts and therefore did not ask questions about the source of the funds. Instead, he gave his son S. Chun approximately $29,000 to help pay off a loan and spent the remainder of the funds paying off debts of his own.

26. CHUN was then shown documentation of four wire transfers out of account 3483 subsequent to the $469,819.44 incoming wire transfer. CHUN confirmed that the $29,000 wire transfer on December 21, 2018, to S. Chun was the money for his son's loan payoff. The remaining three wire transfers were to pay off debts CHUN owed himself. CHUN stated that he asked his son S. Chun to initiate these wire transfers on his behalf since S. Chun was the sole account owner for the bank account.

27. Finally, CHUN was shown copies of eleven endorsed checks that appeared to be endorsed by S. Chun from account 3483. CHUN stated that he endorsed those checks with a

asked his son S. Chun to initiate these wire transfers on his behalf since S. Chun was the sole account owner for the bank account.

27.  Finally, CHUN was shown copies of eleven endorsed checks that appeared to be endorsed by S. Chun from account 3483. CHUN stated that he endorsed those checks with a stamp he had of S. Chun's signature, and that all of the checks were used to pay off loans and other debts he had regarding his company EDHD Inc.

## CONCLUSION

28.  Based on the information detailed above, I respectfully submit there is probable cause to charge HAKHYUN CHUN, with the federal offenses of money laundering and conspiracy to commit money laundering.

Respectfully Submitted,

_____
Stuart T. VonCanon
Task Force Officer
Federal Bureau of Investigation

Sworn and attested to me by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on August 31, 2022.

_____/s/ MRC_____
Mark R. Colombell
United States Magistrate Judge

9